FILED

2017 JAN 30 AM 11:09

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, FLORIDA

**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| Entrust Datacard Corporation,<br><br>Plaintiff,<br><br>v.<br><br>Atlantic Zeiser GmbH, Atlantic Zeiser, Inc., and Innovatime Industrie SARL<br><br>Defendants. | Civil Action No. 3:17-cv-110-J-39MCR<br><br>**PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>**[INJUNCTIVE RELIEF SOUGHT]** |

For its Complaint against Defendants Atlantic Zeiser GmbH, a foreign corporation with its headquarters in Emmingen, Germany ("AZG"), Atlantic Zeiser, Inc., a New Jersey corporation with its registered address and principal place of business at 15 Patton Drive, West Caldwell New Jersey 07006 ("AZI"), and Innovatime Industrie SARL, a foreign limited liability corporate entity with its headquarters in France ("Innovatime"), Plaintiff Entrust Datacard Corporation, a Delaware corporation with its principal place of business at 1187 Park Place, Shakopee, MN 55379 ("EDC") states and alleges the following:

## JURISDICTION

1. This Complaint is for patent infringement and injunctive relief against Defendants Atlantic Zeiser GmbH, a foreign corporation with its headquarters in Emmingen, Germany ("AZG"), Atlantic Zeiser, Inc., a New Jersey corporation with its registered address and principal place of business at 15 Patton Drive, West Caldwell New Jersey 07006 ("AZI"), and Innovatime Industrie SARL, a foreign limited liability corporate entity with its headquarters in France ("Innovatime").

2. Subject matter jurisdiction is based on 28 U.S.C. §1338.

3. Personal jurisdiction is based upon Federal Rule of Civil Procedure 4(h)&(k) and/or Florida Statutes §48.193 and upon the consent to personal jurisdiction in this District by Defendants AZG and AZI.

4. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(a), (c), 1400, and Federal Rule of Civil Procedure 4(h)&(k).

5. Joinder of the named Defendants is appropriate under 35 U.S.C. §299 in that the allegations herein, and Defendants' acts of infringement, arise out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, importing into the United States, offering for sale, or selling of the same accused product or process; and questions of fact common to all defendants will arise in the action.

6. The products at issue in this lawsuit are the family of products known as the PERSOMASTER Card Personalization System ("PERSOMASTER") which is the product name for a modular system made, used, offered for sale, sold or licensed, or imported into the US by Defendants AZG, AZI, and Innovatime. One of the modules of the system is a cassette mechanism for programming the chips of Integrated Circuit Cards ("ICC"). Defendants may also make, use, sell or offer for sale other products not yet discovered or examined by or on behalf of Plaintiff EDC. A copy of a product brochure published and disseminated by Defendants AZI and AZG, on information and belief with the knowledge and acquiescence of Innovatime, is attached as Exhibit A hereto.

7. A video presentation of the PERSOMASTER in operation, published and disseminated by Defendants AZG and AZI, was examined and analyzed on behalf of Plaintiff

EDC. The video was, on information and belief, created by or on behalf of the Defendants, by using a PERSOMASTER in an infringing configuration and manner, and the video was published on the website of Defendants AZG and AZI in the State of Florida and elsewhere in the United States. Plaintiff EDC alleges that the video depicted the machine operating in a configuration and manner that infringed at least one claim of US Patent 6,695,205 ("'205 Patent") and US Patent 6,474,925 ("the '925 Patent"), both patents being owned by Plaintiff EDC at all material times as alleged herein. Defendants AZG and AZI apparently contend that changes were made to the PERSOMASTER after Defendants received notice from Plaintiff of the alleged infringement in the end of 2015. A lawsuit (the "Minnesota lawsuit") was filed in the United States District Court for the District of Minnesota (the "Minnesota Court") against Defendants AZI and AZG, which has since been dismissed without prejudice on grounds of lack of personal jurisdiction. The Minnesota District Court permitted access to certain PERSOMASTER machines, at that time located in Florida, by means of early discovery under the Federal Rules of Civil Procedure. EDC and its representatives looked at five PERSOMASTER machines (serial numbers PMR001-005) during the early discovery. EDC alleges that, notwithstanding the changes Defendants claim to have made to the PERSOMASTER machines, Defendants have and continue to infringe at least one claim of the '205 Patent and at least one claim of the '925 Patent owned by Plaintiff EDC as alleged herein. Further, on information and belief, Defendants have and will continue to make, use, offer to sell, sell and import into the United States, infringing PERSOMASTER machines, unless enjoined from doing so.

8. The claims of the '205 Patent that Plaintiff alleges were infringed prior to the changes Defendants claim to have made to the PERSOMASTER machines are claim 4 and its dependent claims 5 and 6, and claim 8. Defendants' PERSOMASTER may infringe other claims of EDC's '205 Patent but EDC has had insufficient opportunity to make that assessment and reserves the right to allege such further infringement.

9. With respect to claim 4 of the '205 Patent and its dependent claims, Plaintiff believes it is not seriously disputed that, as originally made, used, offered for sale, sold, or imported into the US, all of the PERSOMASTER machines comprise the claim 4 elements of an integrated circuit card programming module, a housing, a linear card path through the housing, a card path transport mechanism for transporting a card along the linear card path, and a mechanism movably mounted in the housing for movement along an axis generally perpendicular to the card path, the mechanism including a plurality of card programming stations mounted thereon and moveable therewith, as required by Claim 4 (and dependent claims 5 and 6). The primary infringement question is whether the "mechanism movably mounted in the housing" includes "a pass-through location through which a card is able to pass without programming." Plaintiff has been advised by counsel for AZG and AZI that, as first made, used, offered for sale, sold, or imported into the US, the PERSOMASTER machines had a pass-through slot. Plaintiff alleges that the machine(s) including the pass-through slot infringed claim 4 and dependent claim 6. Defendant further advised that the pass-through slot was removed after sale and delivery of the first PERSOMASTER machines. After viewing the machines both static and in operation as part of the early discovery in the Minnesota lawsuit, Plaintiff alleges that notwithstanding the alleged

changes, the PERSOMASTER machines, each and all of them, continue to infringe claim 4 and dependent claim 5 of the '205 Patent in that they contain a programming station comprising a pass-through location through which a card is able to pass without programming.

10. With respect to claim 8 of the '205 patent, Plaintiff believes it is not seriously disputed that, as originally made, used, offered for sale, sold, or imported into the US, all of the PERSOMASTER machines result in the practice of a method for programming integrated circuit cards that includes the claim 8 steps of providing an integrated circuit card programming module including a card path, a card transport mechanism for transporting a card along the card path, and a plurality of card programming stations moving along an axis that is generally perpendicular to the card path, as required by claim 8. Plaintiff further alleges that the method practiced by using the PERSOMASTER machines includes moving the integrated circuit card programming stations relative to the card path while non-consecutively loading integrated circuit cards into the card programming stations for subsequent programming. Plaintiff alleges that, in the video referred to in paragraph 7 hereof the non-consecutive loading of ICC cards was plainly visible, and that claim 8 was therefore infringed by the PERSOMASTER machines, each and all of them, as originally made, used, offered for sale, sold, or imported into the US. Plaintiff has been advised by counsel for Defendants AZG and AZI that the "non-sequential loading" function was subsequently disabled after the first PERSOMASTER machines were delivered. Nevertheless, the PERSOMASTER machines as initially made, used, offered for sale, sold,

or imported into the US, included the step of non-sequential loading in infringement of claim 8 of the '205 Patent.

11. With respect to the '925 Patent, Plaintiff believes that it is not seriously in dispute that the PERSOMASTER machines, as originally made, used, offered for sale, sold, or imported into the US, contained most of the elements of claim 1 (and by extension, claims 2-12 which are dependent on claim 1). The primary infringement question is whether the PERSOMASTER machines contain an "elevator being made up of a parallelepiped mobile plate fitted with a plurality of fixed platforms," the platforms being ICC Card programming devices. As originally made, used, offered for sale, sold, and delivered, the PERSOMASTER machines contained a parallelepiped plated fitted with a plurality of fixed platforms. Plaintiff was subsequently informed that the machines were refitted with a different support mechanism for the programming platforms that Defendant contended is not a parallelepiped plate. However, Plaintiff has looked at the machines as a result of early discovery in the Minnesota lawsuit, and alleges that while the support mechanism may have been changed after the initial sale and/or delivery of the machines, it continues to comprise a parallelepiped plate or equivalent thereof, and that claim 1 of the '925 Patent continues to be infringed. As further alleged herein, the '925 Patent has twice been reexamined and two Reexamination Certificates were issued. Some of the original claims were amended during the first of the two Reexaminations, and new claims 13-49 were added. Because of the manner in which Plaintiff was allowed to view the PERSOMASTER machines during early discovery, Plaintiff has not been able to determine if other claims of the '925 Patent are

infringed, but believes they are and reserves the right to assert such additional infringed claims.

12. During the course of early discovery in this case Plaintiff EDC has, through its counsel, obtained documents and other information concerning the respective roles of AZG, AZI, and Innovatime in the manufacture, sale and importation of the products at issue. These documents and the information are presently designated as Attorneys Eyes Only by Defendants AZG and AZI, meaning that EDC's counsel may not disclose them to its own client, or its client's in-house counsel, or to the public, but may disclose to the Court. Plaintiff believes that the designation of all of the documents and information is improper and not in conformance with the Protective Order entered in Minnesota lawsuit by the Minnesota District Court, but Plaintiff will nevertheless keep the documents and information protected as designated until they are otherwise designated by Defendants AZG and AZI, or by this Court. Plaintiff EDC has therefore prepared and is filing with this Complaint and under seal a Confidential Appendix, containing material allegations concerning the respective roles of AZG, AZI, and Innovatime in the matters alleged in this Complaint, and the Confidential Appendix and related Exhibit are incorporated herein by reference.

13. For a customer to use the ICC programming functionality of the PERSOMASTER products made, offered for sale, distributed, imported and sold by Defendants and specifically the system equipped with a cassette mechanism for programming ICC chips, and thereby receive the benefit of the products, the customer either allows the Defendants' equipment to operate in a configuration that infringes the '205 Patent and/or the '925 Patent, or by executing some or all of the steps of method claims of the '205

Patent, or the customer follows the directions, instructions or suggestions of Defendants for the use of the equipment to execute programming of ICC chips, thereby allowing the Defendants' equipment to operate in a configuration that infringes the '205 Patent and/or the '925 Patent, or by executing some or all of the steps of claims of the '205 Patent. Defendants, each and all of them, have the right and ability to stop or limit the foregoing acts of its customers and profits from them. Specifically, the Defendants provide manuals and instructions, and training and demonstrations in the use of the machines.

14. Defendants, each and all of them, induce infringement of the '205 Patent and the '925 Patent.

15. Defendants offer to sell or sell within the United States or import into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of the '205 Patent and/or the '925 Patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use.

## COUNT I

## INFRINGEMENT OF U.S. PATENT 6,695,205

16. Plaintiff incorporates herein by reference paragraphs 1 -15 hereof.

17. On February 24, 2004, United States Letters Patent No. 6,695,205 was duly and legally issued to Robert W. Lundstrom and Peter E. Johnson for Integrated Circuit Card Modules, Systems and Methods. The '205 patent was assigned to Plaintiff EDC (formerly DataCard Corporation) as reflected on the face of the patent and in the records of the United

States Patent and Trademark Office ("USPTO"), and Plaintiff EDC has owned the '205 Patent throughout the period of the Defendants' infringing acts and still owns the patent by assignment. A copy of the '205 Patent is attached as Exhibit B.

18. Defendants AZG, AZI, and Innovatime, each and all of them, have infringed and are still infringing the '205 Patent by making, offering for sale, selling, using, and importing into the United States methods and apparatuses that embody the patented invention, and Defendants will continue to do so unless enjoined by this court.

19. Plaintiff EDC has complied with the statutory requirement of placing a notice of the '205 Patent on the products it manufactures and sells that embody the patented inventions. Plaintiff EDC has notified Defendants of its patent, and Defendants have and continue to infringe the '205 Patent.

20. The products that infringe the '205 Patent are the family of products known as the PERSOMASTER Card Personalization System ("PERSOMASTER") which is the product name for a modular system made, used, offered for sale, and sold or licensed by Defendants AZG, AZI, and Innovatime, and which at the time of delivery to a customer, or if the customer wishes at a later time, may incorporate a cassette mechanism for programming ICC chips. Defendants may also make, use, sell, offer for sale, or import into the US other products not yet discovered or examined by or on behalf of Plaintiff EDC.

21. Plaintiff alleges that the products of Defendants AZG, AZI, and Innovatime directly infringe the '205 Patent. Plaintiff further alleges that Defendants condition participation in the use of their products and the receipt of the benefits upon allowing Defendants' products to operate in a configuration that infringes the '205 Patent, or by

executing some or all of the steps of method claims of the '205 Patent, or the customer follows the directions, instructions or suggestions of Defendants for the use of the equipment in an infringing configuration to execute programming of ICC chips. Defendant has the right and ability to stop or limit the foregoing acts of its customers and profits from them. Defendant establishes the manner or timing of that performance.

22. Defendants are jointly and severally liable for direct infringement of the '205 Patent, or alternatively, jointly and severally vicariously liable for infringement by virtue of operations they cause or direct or suggest to be conducted on a customer's data processing system to their profit, which they have the ability to stop or prevent.

23. Defendants offer to sell or sell within the United States or import into the United States components of a patented machine, manufacture, or combination, or a material apparatus for use in practicing a patent process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, and are therefore jointly and severally liable for contributory infringement under 35 U.S.C. §271(c) and other applicable law.

24. Defendants sell their products with instructions and advertising about infringing uses, intending that third parties will act on such instructions and advertising and engage in such infringing uses. Defendants are therefore jointly and severally liable for inducement to infringe under 35 U.S.C. §271(b) and other applicable law.

25. Defendants infringe the '205 Patent under the Doctrine of Equivalents.

26. On information and belief, Defendants have known of the '205 Patent and have knowingly and willfully infringed the '205 Patent in willful disregard of the patent rights held by Plaintiff EDC.

27. The acts and infringements by Defendants as alleged herein have caused and will continue to cause Plaintiff EDC harm and damages, including but not limited to lost sales, price erosion, and lost profits.

28. Defendants' acts have and will continue to cause Plaintiff irreparable harm which, unless enjoined, will continue.

**COUNT II**

**INFRINGEMENT OF U.S. PATENT 6,474,925**

29. Plaintiff incorporates herein by reference paragraphs 1 -15 hereof.

30. On November 5, 2002, United States Letters Patent No. 6,474,925 was duly and legally issued to Simon Ormerod, Jean-Marc Bernard, and Francis Perin for a Linear Personalization Machine. The '925 patent was assigned to Gilles Leroux, S.A., and subsequently acquired by Plaintiff EDC, and Plaintiff EDC has owned the '925 Patent at all material times herein and still owns the patent. A copy of the '925 Patent is attached as Exhibit C. The patent was reexamined and on September 2, 2008 a Reexamination Certificate No. 6,474,925 C1 was issued, a copy of which is attached hereto as Ex. D. A second Reexamination subsequently occurred and the Reexamination Certificate that was issued on January 5, 2010 is attached hereto as Exhibit E.

31. Defendants AZG, AZI, and Innovatime, each and all of them, have infringed and are still infringing the '925 Patent by making, offering for sale, selling, using, and

importing into the United States methods and apparatuses that embody or employ the patented inventions, and Defendants will continue to do so unless enjoined by this court.

32. The products that infringe the '925 Patent are the family of products known as the PERSOMASTER Card Personalization System ("PERSOMASTER") which is the product name for a modular system made, used, offered for sale, and sold or licensed by Defendants AZG, AZI, and Innovatime, and which at the time of delivery to a customer, or if the customer wishes at a later time, may incorporate a cassette mechanism for programming ICC chips. Defendants may also make, use, sell, offer for sale, or import into the US other products not yet discovered or examined by or on behalf of Plaintiff EDC.

33. Plaintiff alleges that the products of Defendants AZG, AZI, and Innovatime directly infringe the '925 Patent. Plaintiff further alleges that Defendants condition participation in the use of their products and the receipt of the benefits upon allowing Defendants' products to operate in a configuration that infringes the claims of the '925 Patent, or the customer follows the directions, instructions or suggestions of Defendants for the use of the equipment to execute programming of ICC chips. Defendant has the right and ability to stop or limit the foregoing acts of its customers and profits from them. Defendant establishes the manner or timing of that performance.

34. Defendants are jointly and severally liable for direct infringement of the '925 Patent, or alternatively, jointly and severally vicariously liable for infringement by virtue of operations they cause or direct or suggest to be conducted on a customer's data-processing system to their profit, which they have the ability to stop or prevent.

35. Defendants offer to sell or sell within the United States or import into the United States components of a patented machine, manufacture, or combination, or a material apparatus for use in practicing a patent process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, and are therefore jointly and severally liable for contributory infringement under 35 U.S.C. §271(c) and other applicable law.

36. Defendants sell their products with instructions and advertising about infringing uses, intending that third parties will act on such instructions and advertising and engage in such infringing uses. Defendants are therefore jointly and severally liable for inducement to infringe under 35 U.S.C. §271(b) and other applicable law.

37. Defendants infringe the '925 Patent under the Doctrine of Equivalents.

38. The acts and infringements by Defendants as alleged herein have caused and will continue to cause Plaintiff EDC harm and damages, including but not limited to lost sales, price erosion, and lost profits.

39. Defendants' acts have and will continue to cause Plaintiff irreparable harm which, unless enjoined, will continue.

## TRIAL BY JURY

40. Trial by jury is respectfully demanded of all claims so triable.

Therefore, Plaintiff EDC requests:

(a) Judgment that Defendants, each and all of them, have infringed EDC's '205 Patent and its '925 Patent, either or both of them, either directly or vicariously, and either literally or under the Doctrine of Equivalents;

(b) judgment that Defendants have engaged in contributory infringement in violation of 35 U.S.C. §271(c) and other applicable law;

(c) judgment that Defendants have engaged in inducement to infringe in violation of 35 U.S.C. §271(b) and other applicable law;

(d) a preliminary and final injunction against Defendants' continuing infringement;

(e) an accounting for damages for which Defendants should be held jointly and severally liable, including but not limited to EDC's lost sales and profits and recovery of all damages suffered by EDC whether by way of lost sales, lost profits, price erosion, or otherwise, or in the alternative, a reasonable royalty, and a trebling of damages because of the knowing, willful, and wanton nature of Defendants' conduct;

(f) interest and costs;

(g) an award of Plaintiff EDC's attorneys' fees and costs in this action; and

(h) such other and further relief as the Court deems just and equitable.

Dated: January 27, 2017

By ______ #151106 fr
Joanne M. O'Connor
(Fla. Bar No. 0498807)
JONES FOSTER JOHNSTON
& STUBBS, PA
505 South Flagler Drive
Suite 1100
West Palm Beach, FL 33401
561-659-3000
561-650-5300 (facsimile)
joconnor@jonesfoster.com
**ATTORNEYS FOR PLAINTIFF**
**ENTRUST DATACARD CORPORATION**

**OF COUNSEL:**
John B. Lunseth (Minn. #65341)
BRIGGS AND MORGAN, P.A.
2200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402-2157
612-977-8400
612-977-8659 (facsimile)
jlunseth@briggs.com
P:\DOCS\28992\00001\PLD\1RG7170.DOC