**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| ENTRUST DATACARD CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>ATLANTIC ZEISER GMBH, ATLANTIC ZEISER, INC., and INNOVATIME INDUSTRIE SARL<br><br>Defendants. | Case No. 3:17-CV-110-J-39MCR |

**DEFENDANT INNOVATIME INDUSTRIE SARL'S ANSWER TO THE COMPLAINT AND DEMAND FOR JURY TRIAL AND COUNTERCLAIMS**

COMES NOW Defendant Innovatime Industrie SARL ("Innovatime"), and for its Answer to the Complaint and Demand for Jury Trial of Plaintiff Entrust Datacard Corporation (hereinafter, "Entrust"), states as follows:

**GENERAL DENIAL**

Unless specifically admitted below, Innovatime denies each and every allegation in Entrust's Complaint.

**RESPONSES TO SPECIFIC ALLEGATIONS**

**JURISDICTION**

1. Innovatime admits that Entrust's Complaint alleges patent infringement and seeks injunctive relief. Innovatime denies Entrust's infringement allegations and denies that Entrust is entitled to any of the relief it seeks. Innovatime admits that Atlantic Zeiser GmbH ("AZG") is a foreign corporation with its headquarters in Emmingen, Germany. Innovatime admits that

Atlantic Zeiser, Inc. ("AZI") is a New Jersey corporation with its principal place of business at 15 Patton Drive, West Caldwell, New Jersey 07006. Innovatime admits that it has its headquarters in France. Innovatime is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 1 and, therefore, denies such allegations.

2. This Paragraph states a legal conclusion to which no response is required. To the extent a response is required, Innovatime does not contest that this Court has subject matter jurisdiction under 28 U.S.C. § 1338.

3. This Paragraph states a legal conclusion to which no response is required. To the extent a response is required, Innovatime does not contest that Innovatime is subject to personal jurisdiction in this district with respect to this action.

4. This Paragraph states a legal conclusion to which no response is required. To the extent a response is required, Innovatime does not contest that venue is proper in this district.

5. This Paragraph states a legal conclusion to which no response is required. To the extent a response is required, Innovatime does not contest that joinder of the Defendants in this action is proper pursuant to 35 U.S.C. § 299. Further responding, Innovatime denies Entrust's infringement allegations and denies that Entrust is entitled to any of the relief it seeks. Innovatime denies any remaining factual allegations in Paragraph 5.

6. Innovatime admits that Entrust's Complaint alleges that the PERSOMASTER Card Personalization System ("PERSOMASTER") infringes certain patents purportedly owned by Entrust. Innovatime denies Entrust's infringement allegations and denies that Entrust is entitled to any of the relief it seeks. Innovatime admits that AZG and AZI have sold and/or offered to sell the PERSOMASTER in the United States. Innovatime admits that the

PERSOMASTER is capable of programming the chips of Integrated Circuit Cards ("ICC"). Innovatime admits that Exhibit A to the Complaint appears to be a true and accurate copy of a brochure for the PERSOMASTER disseminated by AZ with Innovatime's knowledge. Innovatime denies any remaining factual allegations in Paragraph 6.

7. Innovatime admits that Entrust's Complaint alleges patent infringement and seeks injunctive relief. Innovatime denies Entrust's infringement allegations and denies that Entrust is entitled to any of the relief it seeks. Innovatime admits that a video of the PERSOMASTER in operation made by AZ was available through the AZ website. Innovatime denies that the video available through the AZ website depicts a PERSOMASTER operating in a way that infringed any claim of U.S. Patent 6,695,205 ("the '205 Patent") or U.S. Patent No. 6,474,925 ("the '925 Patent") (collectively, "the Patents-In-Suit"). Innovatime admits that Entrust filed a lawsuit in November 2015 against AZG and AZI in the United States District Court for the District of Minnesota ("the Minnesota lawsuit") and that the Minnesota lawsuit was dismissed in December 2016 because neither AZG nor AZI was subject to personal jurisdiction in Minnesota. Innovatime admits that the court in the Minnesota lawsuit permitted Entrust to inspect five PERSOMASTERs (PRM001-PRM005) in June 2016 and August 2016 as part of the jurisdictional discovery requested by Entrust. Innovatime admits that certain modifications were made to the PERSOMASTER (PRM001) that, as Entrust's counsel acknowledged during the pendency of the Minnesota lawsuit, preclude a finding that the PERSOMASTER infringes any asserted claim of either Patent-In-Suit. Innovatime further responds by stating that the remaining PERSOMASTERs (PRM002-005) examined by Entrust during the Minnesota lawsuit had the same structural and functional features upon delivery in the United States, and still have, to the best of Innovatime's knowledge, the same structure and functionality, as the modified

PERSOMASTER bearing serial number PRM001. Innovatime is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 7 and, therefore, denies such allegations.

8. Innovatime denies Entrust's infringement allegations and denies that Entrust is entitled to any of the relief it seeks. Innovatime denies any remaining factual allegations in Paragraph 8.

9. This Paragraph calls for legal conclusions regarding claim construction to which no response is required. Innovatime denies Entrust's infringement allegations and denies that Entrust is entitled to any of the relief it seeks. Innovatime admits that the PERSOMASTER bearing serial number PRM0001 included a structure that Entrust's counsel asserted was a "pass through slot." Innovatime denies that counsel for Defendants at any time advised Entrust's counsel that the structure identified by Entrust's counsel as a "pass-through slot" would satisfy the "pass through location" element of claims 4, 5, and/or 6 of the '205 Patent. Innovatime admits that the structure referred to by Entrust's counsel as a "pass through slot" was removed from the PERSOMASTER bearing serial number PRM001 and that, as Entrust's counsel acknowledged during the pendency of the Minnesota lawsuit, such removal precludes a finding that the PERSOMASTER infringes any of asserted claims 4-6 of the '205 Patent. Innovatime is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 9 and, therefore, denies such allegations.

10. This Paragraph calls for legal conclusions regarding claim construction to which no response is required. Innovatime denies Entrust's infringement allegations and denies that Entrust is entitled to any of the relief it seeks. Further answering, Innovatime admits that the PERSOMASTER bearing serial number PRM001 was modified such that it does not, as

Entrust's counsel acknowledged during the pendency of the Minnesota lawsuit, have a "non-sequential loading" function as required by claim 8 of the '205 Patent. Innovatime denies the implication in Paragraph 10 of the Complaint that any other PERSOMASTER machine non-sequentially loaded ICCs. Innovatime is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 10 and, therefore, denies such allegations.

11. This Paragraph calls for legal conclusions regarding claim construction to which no response is required. Innovatime denies Entrust's infringement allegations and denies that Entrust is entitled to any of the relief it seeks. Innovatime admits that the PERSOMASTER bearing serial number PRM001 was modified to include a structure having two half-cylinders that, as Entrust's counsel acknowledged during the pendency of the Minnesota lawsuit, is not a parallelepiped mobile plate as that term is used in asserted claim 1 of the '925 Patent. Innovatime denies the implication in Paragraph 10 of the Complaint that any other PERSOMASTER machine did not contain the same structure having two half-cylinders. Innovatime denies that any PERSOMASTER includes an equivalent of the "parallelepiped mobile plate" required by asserted claim 1 of the '925 Patent. Innovatime admits that the '925 Patent has twice been reexamined and that two Reexamination Certificates were issued. Innovatime denies any remaining factual allegations in Paragraph 11.

12. This Paragraph contains legal arguments that do not require a response. To the extent a response is required, Innovatime is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 12. Innovatime incorporates its Response to Plaintiff's Confidential Appendix to Complaint and Demand for Jury trial as if fully stated herein.

13. Innovatime denies Entrust's infringement allegations and denies that Entrust is entitled to any of the relief it seeks. Innovatime admits that AZG and AZI have provided manuals and instructions relating to the PERSOMASTER to those customers that have purchased a PERSOMASTER. Innovatime denies the remaining allegations of Paragraph 13.

14. Denied

15. Denied.

**COUNT I**

16. Innovatime incorporates its responses to Paragraphs 1-15 as if fully stated herein.

17. Innovatime admits that the '205 Patent is entitled "Integrated Circuit Card Modules, Systems, and Methods." Innovatime admits that the '205 Patent issued on February 23, 2004, and that Robert W. Lundstrom and Peter E. Johnson are listed on the '205 Patent as the named inventors. Innovatime also admits that the '205 Patent lists DataCard Corporation as the Assignee of the '205 Patent. Innovatime admits that what appears to be a true and correct copy of the '205 Patent is attached to Entrust's Complaint as Exhibit B. Innovatime is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 17 and, therefore, denies such allegations

18. Denied.

19. Innovatime admits that Entrust has notified Innovatime of the '205 Patent by filing and serving a lawsuit against Innovatime alleging infringement of the '205 Patent. Innovatime denies Entrust's infringement allegations and denies that Entrust is entitled to any of the relief it seeks. Innovatime is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 19 and, therefore, denies such allegations.

20. Innovatime admits that Defendants sell and offer to sell products other than the PERSOMASTER. Innovatime denies the remaining allegations of Paragraph 20.

21. Innovatime admits that Entrust's Complaint alleges patent infringement and seeks injunctive relief. Innovatime denies Entrust's infringement allegations and denies that Entrust is entitled to any of the relief it seeks. Innovatime denies the remaining allegations of Paragraph 21.

22. Denied.

23. Denied.

24. Denied.

25. Denied.

26. Denied.

27. Denied.

28. Denied.

## COUNT II

29. Innovatime incorporates its responses to Paragraphs 1-15 as if fully stated herein.

30. Innovatime admits that the '925 Patent issued on November 5, 2002, and is entitled "Linear Personalization Machine." Innovatime admits that Simon Ormerod, Jean-Marc Bernard, and Francis Perin are listed on the '925 Patent as the named inventors. Innovatime admits that what appears to be a true and correct copy of the '925 Patent is attached to Entrust's Complaint as Exhibit C and that what appear to be true and correct copies of the Reexamination Certificates are attached to the Complaint as Exhibits D and E. Innovatime is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 30 and, therefore, denies such allegations

31. Denied.

32. Innovatime denies Entrust's infringement allegations and denies that Entrust is entitled to any of the relief it seeks. Innovatime admits that Defendants sell and offer to sell products other than the PERSOMASTER. Innovatime denies the remaining allegations of Paragraph 32.

33. Denied.

34. Denied.

35. Denied.

36. Denied.

37. Denied.

38. Denied.

39. Denied.

40. Denied.

## ADDITIONAL AND AFFIRMATIVE DEFENSES

Without altering the burdens of proof, Innovatime asserts the following Additional and Affirmative defenses and reserve the right to amend its Answer, Affirmative Defenses, and Counterclaims, as additional information becomes available.

A. Entrust's Complaint fails to state a claim upon which relief may be granted.

B. Defendants do not infringe, and have not infringed, either directly or indirectly, any claim of the Patents-In-Suit, either literally or under the doctrine of equivalents.

C. The asserted claims of the Patents-In-Suit are invalid for failure to comply with one or more requirements of the Patent Laws, including but not limited to 35 U.S.C. §§ 101, 102, 103, and/or 112. Innovatime incorporates herein by reference all one-hundred fifty pages of the

Preliminary Invalidity Contentions, including Exhibits A and B, served by defendants AZG and AZI on Entrust on September 25, 2017. Innovatime reserves the right to modify, amend, and/or supplement the Preliminary Invalidity Contentions based on additional information obtained through discovery or in light of the Court's claim constructions.

D. Entrust is estopped by representations and concessions made to the Patent Office from claiming infringement either literally or under the doctrine of equivalents.

E. Entrust's claims for damages, if any, are limited by 35 U.S.C. §§ 286 and/or 287.

F. Entrust is barred from recovering costs under 35 U.S.C. § 288.

G. Entrust's requested relief is barred, in whole or in part, under the doctrines of estoppel, waiver, acquiescence, and/or unclean hands.

**PRAYER FOR RELIEF**

WHEREFORE, having fully answered, Innovatime respectfully requests the Court to dismiss Entrust's Complaint, declare this an exceptional case in favor of Defendants, award Defendants their attorneys' fees and costs incurred in this case, and award such other and further relief as the Court may deem just and proper.

**COUNTERCLAIMS**

Defendants and Counterclaim-Plaintiff Innovatime Industrie SARL ("Innovatime"), for its Counterclaims against Counterclaim-Defendant Entrust Datacard Corporation ("Entrust"), states as follows:

**The Parties**

1. Counterclaim-Plaintiff Innovatime is a French corporation with its headquarters in France.

2. On information and belief, Counterclaim-Defendant Entrust is a corporation formed under the laws of the State of Delaware with its principal place of business at 1187 Park Place, Shakopee, Minnesota 55379.

**Jurisdiction and Venue**

3. Entrust has brought suit against Defendants alleging infringement of U.S. Patent Nos. 6,695,205 ("the '205 Patent") and 6,474,925 ("the '925 Patent") (collectively, the "Patents-In-Suit").

4. This is an action arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, for a declaratory judgment that the Patents-In-Suit are not infringed by Defendants and are invalid.

5. This Court has subject matter jurisdiction over Innovatime's counterclaims under one or more of 28 U.S.C. §§ 1331, 1338, 2201, and 2202. An actual controversy exists because Entrust has asserted infringement by Defendants of the Patents-In-Suit and Innovatime believes these allegations are unfounded and without merit.

6. There exists an actual and substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance by this Court of a declaratory judgment.

7. This Court has personal jurisdiction over Entrust and venue is proper in this district because Entrust has voluntarily appeared and consented to this venue by filing its claims alleging patent infringement here.

**Background**

8. The PERSOMASTER EMV Banking Card Personalization System ("PERSOMASTER") is a mid-range personalization solution for the cost-effective production of Flat EMV (Europay, MasterCard, and Visa) Credit, Debit and PrePaid Banking Cards.

9. EMV cards are smart cards—also called chip cards or integrated circuit cards ("ICC")—that store data on integrated circuits or chips in addition to magnetic stripes.

10. Each PERSOMASTER has a programming module that features up to twenty one reader interfaces for programming ICCs.

11. The reader interfaces in each PERSOMASTER are arranged in a single column. No PERSOMASTER machine sold or used in the United States has ever had more than a single column of reader interfaces.

12. In 2015, AZG sold a single PERSOMASTER machine (bearing serial number PRM001) to a customer in France and physically delivered the machine to one of the customer's facilities in Jacksonville, Florida.

13. On November 30, 2015, Entrust sent a letter to AZG and AZI asserting that the PERSOMASTER infringed claim 8 of the '205 Patent.

14. Prior to being informed of the November 30, 2015 letter, Innovatime did not have knowledge of the '205 Patent.

15. Also on November 30, 2015, Entrust filed a complaint in the district court for the district of Minnesota alleging that the PERSOMASTER infringed certain claims of the '205 Patent ("the Minnesota litigation"). Entrust did not allege in its complaint in the Minnesota litigation that the PERSOMASTER infringed any claims of the '925 Patent.

16. Innovatime denies that it or any of the other Defendants has directly or indirectly infringed any claim of the ‘205 Patent.

17. During subsequent telephone calls, counsel for Entrust stated to counsel for Defendants that if certain modifications were made to the PERSOMASTER, then there would be no dispute that the PERSOMASTER did not infringe any claims of either the ‘205 or ‘925 Patents. It was not difficult to make the modifications and so Innovatime participated in making the modifications in the belief this would resolve the dispute.

18. For example, the method of claim 8 of the ‘205 Patent requires, among many other steps, “non-consecutively loading integrated circuit cards into the card programming stations . . ..”

19. As originally constructed, the PERSOMASTER bearing serial number PRM001 was capable of non-consecutively loading ICCs into its reader interfaces.

20. The PERSOMASTER bearing serial number PRM001 was modified such that it consecutively loads ICCs into its reader interfaces.

21. Every PERSOMASTER sold and/or delivered in the United States by AZG and/or AZI after the PERSOMASTER bearing serial number PRM001 also consecutively loads ICCs into the reader interfaces. Stated otherwise, none of those PERSOMASTERs had the ability to non-consecutively load ICCs into the reader interfaces as required by claim 8 of the ‘205 Patent.

22. Use of a PERSOMASTER that consecutively loads ICCs into the reader interfaces does not infringe claim 8 of the ‘205 Patent.

23. During the pendency of the Minnesota lawsuit, counsel for Entrust agreed that a PERSOMASTER modified to only consecutively load ICCs into the reader interfaces does not infringe claim 8 of the ‘205 Patent.

24. Claim 4 of the '205 Patent is directed to "[a]n integrated circuit card programming module" with, among many other limitations, "a pass-through location through which a card is able to pass without programming."

25. No PERSOMASTER sold and/or delivered in the United States has or had "a pass-through location through which a card is able to pass without programming" as that phrase is used in the claims of the '205 Patent.

26. Following conversations between counsel for Defendants and counsel for Entrust that occurred after receipt of the November 30, 2015 letter by AZG and AZI, Defendants' counsel understood that a part counsel for Entrust called a "pass-through slot" could be removed and, once removed, that counsel for Entrust would no longer contend there was any infringement of claims 4-6 of the '205 Patent.

27. Defendants, working with the customer in the United States, easily removed the "pass-through slot" in the PERSOMASTER bearing serial number PRM001.

28. The first PERSOMASTER (PRM001), as modified, does not have a "pass-through location" as that phrase is used in the claims of the '205 Patent.

29. The remaining PERSOMASTERs delivered and/or sold in the United States did not have, and do not have, a "pass-through slot."

30. The remaining PERSOMASTERs delivered and/or sold in the United States do not have a "pass-through location" as that phrase is used in the claims of the '205 Patent.

31. Each PERSOMASTER sold in the United States after the first PERSOMASTER does not have a "pass-through location" as that phrase is used in the claims of the '205 Patent.

32. Entrust did not assert in its November 30, 2015 complaint in the Minnesota litigation that the PERSOMASTER infringed any claim of the '925 Patent

33. Nevertheless, Entrust now alleges in its Complaint in this lawsuit that the PERSOMASTER infringes claim 1 of the ‘925 Patent.

34. Claim 1 of the ‘925 Patent requires, among many other limitations, a “parallelepiped mobile plate (23) fitted with a plurality of fixed platforms.”

35. As originally delivered to the customer, the PERSOMASTER bearing serial number PRM001 included a structure that Entrust erroneously asserted was a “parallelepiped mobile plate.”

36. The structure Entrust asserts was a “parallelepiped mobile plate” was removed from the PRM001 machine after Entrust sent the November 30, 2015 letter.

37. Specifically, the relevant structure in the PRM001 machine was replaced with a structure having two half-cylinders. This structure is not a plate, much less a parallelpiped plate.

38. Each PERSOMASTER sold and/or delivered in the United States after delivery of the PRM001 machine included the same structure having two half-cylinders.

39. The PERSOMASTER bearing serial number PRM001, as modified, does not have a “parallelepiped mobile plate” as that term is used in the ‘925 Patent.

40. Each of the other PERSOMASTERs sold and/or delivered in the United States after the PRM001 machine does not have a “parallelepiped mobile plate” as that term is used in the ‘925 Patent.

41. During the pendency of the Minnesota lawsuit, counsel for Entrust agreed that the structure with two half-cylinders referred to in the preceding Paragraphs was not a “parallelepiped mobile plate” as that term is used in the ‘925 Patent.

42. The modifications made to the PERSOMASTER described above were done because they were readily made, did not affect the operation of the PERSOMASTER, and

counsel for Defendants understood from counsel for Entrust that the making of these modifications would resolve this dispute.

43. On June 6, 2016, representatives of Entrust, including counsel, inspected five PERSOMASTER machines located in Jacksonville, Florida in connection with the Minnesota litigation.

44. During the June 6, 2016 inspection, Entrust's representatives observed the PERSOMASTER in operation.

45. During the June 6, 2016 inspection, Entrust's representatives observed that the PERSOMASTER included a single column of reader interfaces for programming ICCs.

46. During the June 6, 2016 inspection, Entrust's representatives also observed that the single column of reader interfaces in the PERSOMASTER did not have a "pass through slot."

47. During the June 6, 2016 inspection, Entrust's representatives also observed that the five PERSOMASTER machines exclusively used consecutive loading of the reader interfaces for programming ICCs.

48. During the June 6, 2016 inspection, Entrust's representatives also observed that each of the five PERSOMASTER machines included a structure with two half-cylinders for supporting the programming stations, which is not parallelepiped in shape.

49. During the June 6, 2016 inspection, the head of research and development for Entrust stated that the structure with two half-cylinders was not a parallelepiped plate.

50. During the June 6, 2016 inspection, the head of research and development for Entrust agreed the modified PERSOMASTER did not infringe the '925 Patent.

51. Following the June 6, 2016 inspection, counsel for Defendants repeatedly requested that Entrust provide support for any allegation that the PERSOMASTERs inspected by Entrust's representatives on June 6, 2016 infringed any claim of the '205 Patent and/or the '925 Patent.

52. Entrust did not provide any such support. Instead, counsel for Entrust stated in an email to Defendants' counsel that "we do not necessarily agree with your conclusions concerning what yesterday's inspection demonstrated; we are considering our options and will be in touch." A true and correct copy of the email sent by Entrust's counsel is attached hereto as Exhibit A.

53. On August 26, 2016, representatives of Entrust, including counsel, conducted a second inspection of the five PERSOMASTER machines located in Jacksonville, Florida in connection with the Minnesota litigation.

54. During the August 26, 2016 inspection, counsel for Entrust requested that three demonstrations be made with a PERSOMASTER:

A. A demonstration where the card programming module was deactivated. In this mode, the card programming module moved the elevator to a fixed position where all of the cards moved through the same card programming station. As each card moved into the station, the programming head closed on the card, then opened, and then moved the card out of the station.

B. A demonstration where the IC chip on several cards (in a stack of otherwise good cards) was covered by a sticker so that the card would have an IC fault. In this mode, the card with the "bad" IC chip was retained in its respective card programming station as it moved in the elevator up and down until its turn to leave the elevator / card programming station. The card path just after the exit from the elevator included a mechanical device

for moving the bad card into a dropout box. Thus, the path of the "bad IC chip" card was to move into the respective card programming station, the programming head closed on the card, the card was retained in the respective programming station and moved in the elevator up and down until its turn to leave the elevator, whereafter the card exited the respective card programming station and was then removed from the card path and into the dropout box.

C. A demonstration where several cards (in a stack of otherwise good cards) were turned upside down so that they would have a magnetic stripe fault. In this mode, the card with the magnetic stripe fault moved into the respective card programming station, the programming head closed on the card and then opened, and the card then exited the respective card programming station. Upon exiting, the subsequent mechanical device moved the bad card into the dropout box.

55. Each of Demonstrations (A), (B), and (C) in Paragraph 54, above, was conducted during the inspection on August 26, 2016. No other demonstrations were requested by Entrust nor were any other demonstrations of the subject PERSOMASTER conducted during the inspection on August 26, 2016.

56. Entrust alleges that in Demonstration (A) in Paragraph 54 above, the programming station functions as a "pass-through location" as this quoted term appears in claim 4 of the '205 Patent.

57. Entrust alleges that in Demonstration (A) in Paragraph 54, above, the programming station does not function as a "pass-through location" as this quoted term appears in claim 4 of the '205 Patent.

58. With respect to the ‘205 Patent, Entrust alleges that a PERSOMASTER that is able to perform the functionality shown in Demonstration (A) in Paragraph 54, above, would infringe if used commercially by an unlicensed third party (regardless of whether or not such PERSOMASTER was also able to perform the functionality shown in Demonstration (B) or Demonstration (C)).

59. Entrust alleges that in Demonstration (B) in Paragraph 54, above, the respective programming station functions as a “pass-through location” as this quoted term appears in claim 4 of the ‘205 Patent.

60. Entrust alleges that in Demonstration (B) in Paragraph 54, above, the respective programming station does not function as a “pass-through location” as this quoted term appears in claim 4 of the ‘205 Patent.

61. With respect to the ‘205 Patent, Entrust alleges that a PERSOMASTER that is able to perform the functionality shown in Demonstration (B) in Paragraph 54, above, would infringe if used commercially by an unlicensed third party (regardless of whether or not such PERSOMASTER was also able to perform the functionality shown in Demonstration (A) or Demonstration (C)).

62. Entrust alleges that in Demonstration (C) in Paragraph 54, above, the respective programming station functions as a “pass-through location” as this quoted term appears in claim 4 of the ‘205 Patent.

63. Entrust alleges that in Demonstration (C) in Paragraph 54, above, the respective programming station does not function as a “pass-through location” as this quoted term appears in claim 4 of the ‘205 Patent.

64. With respect to the ‘205 Patent, Entrust alleges that a PERSOMASTER that is able to perform the functionality shown in Demonstration (C) in Paragraph 54, above, would infringe if used commercially by an unlicensed third party (regardless of whether or not such PERSOMASTER was also able to perform the functionality shown in Demonstration (A) or Demonstration (B)).

65. With respect to the ‘205 Patent, Entrust alleges that a PERSOMASTER that is able to perform any of the functionalities shown in Demonstrations (A), (B), or (C) in Paragraph 54, above, would infringe if used commercially by an unlicensed third party.

66. At the end of the August 26, 2016 inspection, counsel for Source One, Stephen B. Sambol, asked counsel for Entrust whether counsel for Entrust wanted to see anything else.

67. In response to Mr. Sambol asking counsel for Entrust whether counsel for Entrust wanted to see anything else at the end of the August 26, 2016 inspection, counsel for Entrust replied “No.”

## COUNT I

## Declaratory Judgment of Non-Infringement and Invalidity of U.S. Patent No. 6,695,205

68. Innovatime incorporates the allegations of Paragraph 1-67 above, as if fully set forth herein.

69. Entrust asserts it is the assignee and owner of the ‘205 Patent.

70. Entrust alleges that Defendants have infringed the ‘205 Patent.

71. On September 25, 2017, Atlantic Zeiser GmbH and Atlantic Zeiser, Inc. served their Preliminary Invalidity Contentions (“Preliminary Invalidity Contentions”) in this lawsuit. Innovatime incorporates herein by reference all one-hundred fifty pages of the Preliminary Invalidity Contentions, including Exhibits A and B.

72. The asserted claims of the ‘205 Patent are invalid for failing to comply with one or more of the requirements of the Patent Laws, including but not limited to 35 U.S.C. §§ 101, 102, 103, and/or 112.

73. No Defendant has infringed, directly or indirectly, any claim of the ‘205 Patent, either literally or under the doctrine of equivalents.

74. There has been, and is now, a substantial and continuing justiciable controversy between Innovatime and Entrust as to the validity and infringement of the ‘205 Patent.

## COUNT II

### Declaratory Judgment of Non-Infringement and Invalidity of U.S. Patent No. 6,474,925

75. Innovatime incorporates the allegations in Paragraphs 1-67 above, as if fully set forth herein.

76. Entrust asserts it is the assignee and owner of the ‘925 Patent.

77. Entrust alleges that Defendants have infringed the ‘925 Patent.

78. Innovatime incorporates herein by reference all one-hundred fifty pages of the Preliminary Invalidity Contentions, including Exhibits A and B.

79. The asserted claims of the ‘925 Patent are invalid for failing to comply with one or more of the requirements of the Patent Laws, including but not limited to 35 U.S.C. §§ 101, 102, 103, and/or 112.

80. No Defendant has infringed, directly or indirectly, any claim of the ‘925 Patent, either literally or under the doctrine of equivalents.

81. There has been, and is now, a substantial and continuing justiciable controversy between Innovatime and Entrust as to the validity and infringement of the ‘925 Patent.

## PRAYER FOR RELIEF

WHEREFORE, Counterclaim-Plaintiff Innovatime Industrie SARL requests judgment:

A. Declaring that no Defendant has infringed, directly or indirectly, any claim of United States Patent Nos. 6,695,205 or 6,474,925, either literally or under the doctrine of equivalents;

B. Declaring that United States Patent Nos. 6,695,205 and 6,474,925 are invalid;

C. Declaring that this is an exceptional case under 35 U.S.C. § 285 and awarding Innovatime its reasonable attorneys' fees, expenses, and costs in this action; and

D. Granting Innovatime such other relief as the Court deems appropriate.

## JURY TRIAL DEMANDED

Under Federal Rule of Civil Procedure 38(b), Innovatime respectfully demands a trial by jury on all issues so triable.

Dated: October 27, 2017

Respectfully submitted,

By: *s/ Robert M. Evans, Jr.*

SENNIGER POWERS LLP
Robert M. Evans, Jr. (pro hac vice)
Michael J. Hartley (pro hac vice)
Kyle G. Gottuso (pro hac vice)
100 North Broadway, 17th Floor
Saint Louis, Missouri 63102
Tel: (314) 345-7000
Fax: (314) 345-7600
Email: revans@senniger.com
mhartley@senniger.com
kgottuso@senniger.com

-and-

James Glober
GLOBER LAW FIRM
2119 Riverside Avenue
Jacksonville, Florida 32204
Tel: (904) 633-9999
Fax: (904) 388-0968
Email: jglober@globerlaw.com

*Attorney for Defendants Atlantic Zeiser GmbH; Atlantic Zeiser, Inc.; and Innovatime Industrie SARL*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 27, 2017, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Joanne M. O'Connor
JONES FOSTER JOHNSTON & STUBBS PA
505 South Flagler Dr., Suite 1100
West Palm Beach, FL 33401
joconnor@jonesfoster.com

John B. Lunseth
Karen D. McDaniel
BRIGGS AND MORGAN, P.A.
2200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402-2157
jlunseth@briggs.com
kmcdaniel@briggs.com

*s/ Robert M. Evans, Jr.*
Attorney