**UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

| | |
|---|---|
| ENTRUST DATACARD CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>ZEISER GMBH, formerly known as Atlantic Zeiser GmbH, ZEISER, INC., formerly known as Atlantic Zeiser, Inc., and INNOVATIME INDUSTRIE SARL<br><br>Defendants. | Case No. 3:17-CV-110-J-39MCR |

**DEFENDANTS ZEISER GMBH AND ZEISER, INC.'S
OPPOSITION TO PLAINTIFF'S MOTION FOR DISCOVERY
SANCTIONS AGAINST ZEISER GMBH AND ZEISER, INC.**

Entrust's motion is without merit. Entrust has deposed several witnesses on the relevant issues in this case. And Zeiser GmbH and Zeiser, Inc. (collectively, "Zeiser" or "Zeiser defendants") offered numerous dates for a deposition on all of the remaining issues in the Rule 30(b)(6) Notice to the Zeiser defendants for which there is responsive information, including: (1) March 1, 2019, (2) any day the following week commencing March 4, or (3) later in the month to coincide with the mediation date when a witness from Germany would be available. Entrust flatly rejected every single one of these dates, preferring instead to file the present motion. Indeed, Entrust's present Motion represents Entrust's *fourth* attempt to dismiss Defendants' counterclaims and affirmative defenses without addressing the merits. *See* Dkt. Nos. 27, 80, 229, and 231.

The relevant issues in this case—non-infringement, invalidity, and alleged damages—are straightforward, and Entrust has had ample opportunity over the course of the

last **several years** to conduct discovery on those issues.  To that end, and as explained in detail in Defendants' pending summary judgment motions: (1) Entrust has repeatedly admitted that Defendants successfully redesigned the accused PERSOMASTER machines in a way that does not infringe most of the Asserted Claims of the Patents-in-Suit; and (2) Entrust has long been aware of its own prior art that renders the remaining Asserted Claims invalid.[1]

The Zeiser defendants respectfully submit that Entrust's Motion should be denied.

## FACTUAL BACKGROUND

The lengthy and unnecessarily contentious discovery history in this case has been discussed repeatedly.  However, Entrust's present Motion again mischaracterizes events in a clear effort to prejudice the Court against Defendants and Defendants' counsel.  To wit, Entrust has consistently and repeatedly misrepresented Defendants' document production, witness production, and the discovery process in general.  *See*, *e.g.*, Dkt. 154; Dkt. 168; Dkt. 184 (Nov. 2, 2018 Order) at 11-12 (As this Court already noted, "[h]owever, [Entrust's] arguments appear to be inaccurate and outdated …").  What follows is an accurate recitation of the Defendants' efforts to timely schedule depositions and move discovery forward in this case over the last approximately six-months.  Only the last six months are presented as Entrust did not serve any deposition notices or otherwise seek to depose any of Defendants or their witnesses until August 2018, 19-months after filing its Complaint in January 2017 and only months before the fact discovery deadline which, following a first extension, was

---

[1] *See* Dkt. Nos. 238, 239, 240.

November 1, 2018.  Entrust did not serve a deposition notice for any Zeiser witnesses until October 2018.

I. **Defendants Repeatedly Attempted to Reach a Comprehensive Deposition Schedule with Entrust But Entrust Refused to Participate**

Contrary to Entrust's numerous misrepresentations, Defendants' counsel <u>repeatedly</u> attempted to work out a comprehensive deposition schedule with Entrust's counsel.  For example, on August 21, 2018, Entrust's counsel served a Rule 30(6)(6) deposition notice for Innovatime.  Dkt. 174-3 (email exchange).  Entrust also served a Rule 45 subpoena *duces tecum* on David Belan, Zeiser, Inc.'s then head of sales.[2]  No Rule 30(b)(6) deposition notice for either Atlantic Zeiser (now "Zeiser") defendant had been served as of that date.  Defendants' counsel nevertheless offered to work with Entrust's counsel to set up a comprehensive deposition schedule of all witnesses, including Zeiser GmbH's (formerly AZG) witnesses, in an email to counsel for Entrust dated August 27, 2018:

> [W]ill Entrust be seeking to depose any Innovatime employees in their individual capacity? **Similarly, will Entrust be seeking to depose AZG and/or any of AZG's employees?** As you know, Innovatime and AZG are European entities and their respective employees are located in Europe.
>
> **If multiple depositions will be taken, we believe it makes sense to coordinate schedules and locations so as to minimize the expense and burden on all parties to the lawsuit.**  Please let us know if you disagree.

Dkt. 174-3.  (emphasis added).  Entrust refused.  Dkt. 174-4.

---

[2] Entrust also mischaracterizes the facts related to Mr. Belan's deposition.  Entrust was not "forced" to serve a subpoena on Mr. Belan.  Rather, Entrust <u>unilaterally did so</u> without any prior notice to Defendants.  Dkt. 174-10 at 1.  Defendants' nevertheless produced relevant emails sought from Mr. Belan (despite the fact that no ESI order was ever agreed to or entered) and produced Mr. Belan for a deposition.

3

Entrust did not serve Rule 30(b)(6) deposition notices for the Zeiser defendants until over a month later on October 4, 2018.

Plaintiff now boldly and repeatedly accuses the Zeiser Defendants of "hid[ing] its witnesses until after the knowledgeable persons were no longer employees of the successor Zeiser entities" after the Coesia transaction. Motion at 12. *See also id*. at 2.

Not true. The Coesia transaction closed in September 2018, the month *before Entrust first served deposition notices for any Zeiser witnesses*, thirteen months after the Zeiser defendants identified knowledgeable witnesses in their August 2017 Rule 26 Initial Disclosures, and eighteen months after Plaintiff filed its Complaint in this Court in January 2017. Thus, it was Entrust that waited until after the Coesia transaction closed before serving the subject discovery.

During the October 11, 2018 Status Conference, the Court directed the Parties to coordinate a deposition schedule. Oct. Status Conf. Tr. at 59:10-17. Five days later, Defendants' counsel attempted to follow the Court's direction and again set up a comprehensive deposition schedule. Dkt. 188-1 at 3. Entrust, again, refused. *Id*. Shortly thereafter, Defendants reiterated their desire to Entrust's counsel to work toward a comprehensive deposition schedule:

> We are disappointed that you have chosen not to heed the Court's directions from the bench during the October 11 status conference to be more cooperative and move the case forward. … We remain open to discussing the remaining scheduling and discovery issues. We hope that you will be willing to do the same on a reasonable time frame.

Dkt. 188-2 at 2-3. Entrust maintained its refusal.

Entrust's purported reason for refusing to participate in discovery was Innovatime's proper refusal to produce all of the (irrelevant) source code that Entrust was demanding. To quote Entrust's counsel:

> Regarding the depositions of Innovatime, **AZG**, etc., we will be happy to discuss with you when and where those depositions will take place, **but only after we are assured that the source code is going to be produced to our experts,** and any other documents material to the depositions are also going to be produced**. There is no point in arranging the depositions until the documents have been actually produced or you at least have a date by which complete disclosure of documents will be made.**

Dkt. 188-1 (emphasis added). *See also* Dkt. 174-4; Dkt. 174-12. Entrust further refused to discuss discovery until after (1) all of the demanded (irrelevant) source code was produced and (2) Innovatime was subsequently deposed. To again quote counsel for Entrust:

- "You can expect that we will not provide any further discovery until you actually meet your duties, provide documents, **and the Innovatime deposition can be taken**." Dkt. 188-2.

- "A plan that has us [Entrust] providing discovery to [Defendants], before you provide us what we have asked for, will be rejected. **Until then, we are not providing any depositions**."). Dkt. 174-12 (emphasis added).

As has been presented to the Court on numerous occasions, Entrust's demand for source code for the entire PERSOMASTER machine was overly broad, unduly burdensome, and grossly disproportionate to the needs of the case. Dkt. 154 at 9-11; *see, generally,* Dkt. 201. Indeed, this Court previously rejected Entrust's demand for all of the source code. To quote the Court's Order: "[Entrust's] argument, as it stands, does not show that [Entrust] is entitled to Defendants' source code in its entirety for the accused machines." Dkt. 184 at 14.

Undeterred, Entrust continued its refusal to participate in discovery until, contrary to the Court's Order, all of the source code Entrust demanded was produced. Dkt. 201-2 at 3.

5

Notwithstanding the prior statement in the Order, Entrust filed a second motion to compel production of the source code.  Dkt. 196.  The effect of Entrust's unreasonable demands and accompanying refusal to cooperate in discovery was to further delay deposition scheduling—despite the Court's prior admonition to Entrust's counsel at the October Status Conference to "prosecute this case and move forward"  Tr. at 62:10-12.

Entrust went so far as to move to quash a subpoena Defendants properly served on one of Entrust's former employees and a named inventor of the '205 patent, Robert Lundstrom, in January 2019.  In denying Entrust's motion to quash, the Minnesota Court faulted Entrust for its attempt to write and enforce its own set of discovery rules.  To quote the Minnesota court:

> The record here makes clear that Entrust is attempting to prevent the Defendants from taking Mr. Lundstrom's deposition until it first obtains all the discovery it has requested in the underlying litigation. . . . **The Court is aware of no authority that permits a party to claim for itself the power to foreclose its opponent's discovery efforts until it receives everything it wants**.

Dkt. 218-14 (emphasis added).

Entrust's motivation for delaying Mr. Lundstrom's deposition[3] became clear when he was finally deposed on February 1.  Mr. Lundstrom acknowledged that Entrust had sold prior art card personalization machines that were not disclosed to the Patent Office during prosecution of the '205 patent despite the fact that those machines included

---

[3] Entrust had previously unilaterally cancelled Mr. Lundstrom's deposition in September 2018.  Dkt. 174-9.

the alleged point of novelty (the "pass-through" functionality) in the asserted claims of the '205 patent.[4]

## II. Entrust Again Waited Until the 11th Hour to Pursue Depositions

Having refused for months to participate in setting a comprehensive deposition schedule, and with the new March 1, 2019 discovery deadline quickly approaching, Entrust served numerous deposition notices on January 16, 2019. Dkt. 231-1 and Dkt. 231-2. In the same limited time frame, Defendants also had to take the previously noticed depositions of Entrust's Rule 26 witnesses and the 30(b)(6) deposition of Entrust that Entrust had refused to provide—a total of five depositions. On February 4, 2019, Entrust offered four of those witnesses for depositions the week of February 18, 2019. Entrust's counsel also indicated that counsel was not available for any depositions the week of February 25, 2019. In short, and despite knowing that Defendants' witnesses resided in Europe, Entrust was seeking their depositions in the United States in a very limited window of time—February 5 through February 15.[5] This was not workable.

On February 21, 2019, Entrust, despite its purported unavailability the week of February 25, offered to produce its last fact witness, Anthony Rakun, for a deposition that

---

[4] Mr. Lundstrom's deposition transcript was submitted with Defendants' Motion for Summary Judgment of Invalidity but has not yet been entered on the docket. *See* Dkts. 240, 241. The invalidating prior art machines sold by Entrust are the 7000 Series and 9000 Series machines, which are discussed in Defendants' Motion for Leave to File a Reply to Defendants' Second Motion to Compel. *See* Dkt. 223.

[5] Rather than disputing the propriety of making all of Defendants' witnesses travel to the United States instead of having those depositions take place in Europe, Defendants attempted to accommodate Entrust's demands in hopes of moving this case toward resolution. But with such a limited time frame resulting from Entrust's refusal to participate in discovery, doing so proved difficult on such short notice.

week on February 26, 2019.[6] Exh. 1. Defendants' counsel rearranged their schedules, quickly secured a conference room in Austin, Texas, and timely completed Mr. Rakun's deposition on the date offered, just three days before the close of fact discovery and five days after being given notice of Mr. Rakun's availability. *Id*.

### III. The Rule 30(b)(6) Notices to Zeiser GmbH and Zeiser, Inc. and Depositions Taken on the Substantive Issues of the Case

Entrust served its Amended Notices of Deposition on Zeiser GmbH and Zeiser, Inc. on January 15, 2019. The notices on the Zeiser Defendants are identical and each contain 69 topics. That same day, Entrust also served an Amended Notice of Deposition on Innovatime that contained the identical Topics 1-64 to those included in the Zeiser notices.

Mr. Belan was previously designated by the Zeiser defendants and testified regarding topics 14, 16, 17, 21, 42, 43, 44, 49, 50, and 53 of the original Zeiser notices (these topics were the same as in the Amended Notices). These topics (and Mr. Belan's testimony) generally dealt with the purported infringement and damages issues in this case, such as sales, offers to sell, prices, marketing, communications with customers, customer lists, attendance at tradeshows, and the like.

Entrust also took the deposition of Mr. Rastel, who testified regarding the Site Acceptance Tests for the PERSOMASTER machines as he was personally in attendance for

---

[6] Entrust falsely asserts that Defendants requested Mr. Rakun's deposition at the "last-minute." Dkt. 231 at 6. Defendants first identified its desire to depose Mr. Rakun on August 30, 2018. Dkt. 174-5; *see also* Dkt. 174-10 at 2 (September 7, 2018 email requesting Mr. Rakun's availability). Entrust did not provide a date for Mr. Rakun's deposition until February 21, 2019.

the tests. *See* Dkt. 200, 234; Rastel Depo. at, *e.g.*, 66-67, 95-99; 115-16.[7] Given this, and the fact that the Zeiser employees involved in the SAT were no longer employed by Zeiser and Entrust refused to travel to Europe where those individuals reside, the Zeiser defendants designated Mr. Rastel's testimony for the 30(b)(6) Topics related to the SAT tests.[8]

On February 12, 2019, Entrust deposed Mr. Jean Michel Jousson, Innovatime's CEO. Mr. Jousson also appeared the next day as Innovatime's Rule 30(b)(6) designee for all of the topics addressed to Innovatime. As Entrust knows, Innovatime designed and manufactured the relevant IC modules of the accused PERSOMASTER machines, as well as the simple, inexpensive, and non-infringing modifications that were made to the PERSOMASTER machines after Entrust filed suit in November 2015. As Entrust also knows, Zeiser supplied only the drop-on-demand printers that were included in the PERSOMASTER machines and are wholly irrelevant to Entrust's infringement allegations. *See* Confidential Appendix to Complaint at 2-3.

Because Innovatime and Mr. Jousson are thus the most knowledgeable regarding the structure and functionality of the IC programming modules (*e.g.* the information relevant to

---

[7] The full transcript of Mr. Rastel's deposition was submitted with Defendants' Opposition to Plaintiff's Motion for Production of Source Code and for a Protective Order.

[8] Entrust purports to complain that Mr. Rastel was not permitted to review "documents" designated as "confidential by the AZ defendants" during the deposition. Entrust strategically fails to mention that the one document Defendants' counsel objected to Mr. Rastel being provided was an invoice issued by Innovatime to AZG. Dkt. 215 at 11-12. That document was wholly irrelevant to the SAT tests Mr. Rastel attended in 2016 and subsequently testified about in his deposition. Entrust also omits the fact that Mr. Rastel was did review a document produced by Defendants during the deposition. *Id*. at 13. Mr. Rastel also testified at length about the inspection of the accused PERSOMASTER machines on June 6, 2016 at Source One's facility in Jacksonville (*see* Topics 66, 67 of the 30(b)(6) Notices to Zeiser), though Zeiser did not specifically designate his testimony regarding those topics. Rastel Depo. at 215-220.

alleged infringement), the Zeiser defendants also designated Mr. Jousson to testify as to the identical topics in the Zeiser 30(b)(6) notices: Topics 4, 5, 6, 8, 10, 30, 31, 58, 60, 62, 64, and 65.[9]  Dkt. 231-16.  Entrust thus had every opportunity to address any questions it had regarding Entrust's infringement allegations during Mr. Jousson's full day personal deposition and during a second full day deposition when Mr. Jousson testified on behalf of Innovatime as a Rule 30(b)(6) witness.  Mr. Jousson was also designated by Innovatime to testify regarding Innovatime's affirmative defenses and counterclaims, including invalidity—Topic 3.  Innovatime's and Zeiser's invalidity claims are identical.  Entrust thus also had the opportunity to seek testimony regarding that issue as well.

Of the remaining 30(b)(6) topics in the deposition notices to the Zeiser defendants, thirteen (Topics 7, 9, 11, 15, 19, 20, 22, 25, 27, 33, 35, 39, and 41) are directed only to the "location, nature, and contents of all documents" produced by Zeiser regarding certain topics. Others seek information about topics for which Zeiser has no relevant responsive information, such as those addressed to company-wide financial statements, sales forecasts, competitive analyses, market analyses, and the like (such as Topics 18, 23, 26, 28, 45, 61).[10] Other topics are directed: (1) to the corporate formalities of the Zeiser defendants (Topics 12 and 13), (2) sales price, profits, and costs related to the PERSOMASTER machines (Topics 51, 52, 54, 55, 56, 57); and (3) customer support and training (Topic 32, 34, 36).

---

[9] These topics also include contracts between Zeiser and Innovatime related to the PERSOMASTER machines and the Factory Acceptance Tests performed for the PERSOMASTER machines at Innovatime's facility in France (to the extent such tests were actually performed).

[10] Notably, Entrust has produced little if any information on these same subjects in this lawsuit.

Two of the topics (Topics 68 and 69) are directed to the Coesia transaction. As explained in previous filings, the relevant transaction documents have been produced and provide Entrust with the information necessary to confirm that the Zeiser Defendants remain the real-parties-in-interest. Dkt. 243 at 4-5. Entrust's assertion that the documents were not produced (Dkt. 231 at 10) remains incorrect.

### III. The Zeiser Defendants Offered Two Additional Zeiser Depositions for All Remaining Rule 30(b)(6) Topics which Entrust Refused

For all of the remaining topics for which a witness had not already appeared, the Zeiser Defendants offered the deposition of Mr. Tritschler, a German citizen, in the United States to occur on March 20, 2019. While this date is after the March 1 discovery deadline, this was the earliest possible date Mr. Tritschler was available to appear in the United States for a deposition. Dkt. 231-20 at 3. Also, for convenience for a foreign witness, Mr. Tritschler's deposition would have occurred the day before the Court ordered mediation which was, at that time, agreed to occur on March 21. *Id.* at 1-3. Entrust, however, refused to accept this deposition as it would have occurred after the discovery deadline.

To accommodate Entrust's request that the deposition occur on or before the March 1 discovery deadline, the Zeiser Defendants offered Mr. Coco,[11] Zeiser Inc.'s former CEO, to testify on their behalf regarding the remaining 30(b)(6) categories on March 1, 2019. Dkt.

---

[11] In its Motion, Plaintiff complains that Mr. Coco "would not be expected to have knowledge about the parent AZG's negotiation and consummation of its asset sale to Coesia, nor the vast number of topics which remain for AZG and AZI." Dkt. 231 at 12. But Plaintiff's assertions regarding what Mr. Coco could learn from the Zeiser Defendants is pure speculation. Under Rule 30(b)(6), a party may designate any person as a representative and that individual can learn the relevant facts and testify about them. Indeed, Mr. Coco appeared as a 30(b)(6) witness on behalf of AZG for topics concerning sales of the accused PERSOMASTER machine during the Minnesota case without any objection by Entrust.

231-20 at 1. Notably, Entrust had previously scheduled Mr. Coco's deposition for February 5, 2019, but unilaterally cancelled that deposition on January 28, 2019 without explanation. Entrust now asserts that it cancelled Mr. Coco's deposition because Entrust learned that Mr. Coco was retired *after* serving a subpoena on him on in December 2018 (Dkt. 231 at 6). This is false. Indeed, Entrust's counsel learned Mr. Coco was retired in October 2018 during Mr. Belan's deposition. Dkt. 227, 232[12] at Belan. Tr. at 155 ("[Mr. Belan] Mr. Coco is no longer with the company though. Q. [Mr. Lunseth] **No, I know. You told us he retired**.") (emphasis added).

That point aside, Entrust refused to take the offered deposition of Mr. Coco on March 1, again asserting that Entrust's counsel was not available the entire week of February 25 due to a hearing in an unrelated case. As noted above, however, Entrust's counsel was able to attend Mr. Rakun's deposition on February 26 in Austin, Texas. And when the Zeiser defendants' subsequently offered to produce Mr. Coco any day the following week commencing March 4, 2018, Entrust refused. Exh. 2.

The unrelated case referred to by Entrust's counsel was the *Aatrix* case also pending in this Court. The referenced hearing occurred on February 28, and the only attorney noted as appearing for Aatrix was Mr. Lunseth (as well as his local counsel in that case). Exh. 3. The other three attorneys from Mr. Lunseth's office that have also entered appearances and

---

[12] The full transcript of Mr. Belan's was submitted under seal with Defendants' Opposition to Entrust's motion regarding the Coesia transaction. *See* Dkt. 227. Notably, the excerpt submitted by Entrust with its motion regarding the Coesia transaction included Mr. Belan's testimony that Mr. Coco was retired.

been actively involved in this case (Ms. McDaniels, Ms. Vats-Fournier, and Mr. Johnson) were not present at the February 28 Aatrix hearing according to the Court's record.

Thus, rather than having any one of those other three attorneys take the deposition on March 1 as offered by Defendants, Entrust's counsel instead spent the day drafting its present sixteen-page motion that was filed that same day on March 1.

## ARGUMENT

Under Rule 30(b)(6), a corporation may designate "one or more officers, directors, or managing agents, **or designate other persons who consent to testify on its behalf**." Fed. R. Civ. P. 30(b)(6) (emphasis added). *See also PPM Finance, Inc. v. Norandal USA, Inc.*, 392 F.3d 889 (7th Cir. 2004) (corporation's designation of former CFO as Rule 30(b)(6) representative was proper as he could testify "to matters known or reasonably available to the organization."); *Rijhwani v. Wells Fargo Home Mortg., Inc.*, No. C 13-05881 LB, 2015 U.S. Dist. LEXIS 10579, at *9 (N.D. Cal. Jan. 28, 2015) ("[I]t is settled law that a party need not produce the organizational representative with the greatest knowledge about a subject; instead, it need only produce a person with knowledge whose testimony will be binding on the party.") (citing *Rodriguez v. Pataki*, 293 F. Supp. 2d 305, 311 (S.D.N.Y. 2003)).

The Zeiser defendants designated and proffered witnesses on the 30(b)(6) topics pertinent to the relevant issues in this case: (1) alleged infringement; (2) invalidity; and (3) purported damages. That the Zeiser defendants did not appoint the specific witnesses that Entrust believes should have been identified is immaterial. *See Booker v. Massachusetts Dep't of Pub. Health*, 246 F.R.D. 387, 389 (D. Mass. 2007) ("[I]t is ultimately up to the corporation to designate its Rule 30(b)(6) witness. . . . Though the Plaintiff clearly would

have preferred Barbara MacLaughlin to be the Department of Public Health's 30(b)(6) designee, such a preference should not have spawned a motion for sanctions. On the contrary, Plaintiff may not impose his belief on Defendants as to whom to designate as a 30(B)(6) witness."); *QBE Ins. Corp. v. Jorda Enterprises, Inc.*, 277 F.R.D. 676, 688 (S.D. Fla. 2012).

As established in the Factual Background section above, Defendants' extensive efforts to arrange a comprehensive deposition schedule were thwarted by Entrust's refusal to participate. Entrust has been provided with numerous opportunities to depose witnesses knowledgeable on the relevant issues in this case. That Entrust ultimately chose to file the present motion rather than depose either of the witnesses available (Mr. Coco or Mr. Tritschler) does not justify imposition of sanctions on the Zeiser defendants. And there is no basis to reward Entrust for its dilatory behavior.

As the 11th Circuit has recognized, dismissal of a party's claims is a "severe sanction" and "is appropriate only as a last resort, when less drastic sanctions would not ensure compliance with the court's orders." *Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1542 (11th Cir. 1993). *See also Axiom Worldwide, Inc. v. HTRD Grp. Hong Kong Ltd.*, No. 8:11-CV-1468-T-33TBM, 2013 WL 2406247, at *2 (M.D. Fla. June 1, 2013) (noting that case was the "rare egregious case" which merited the "severe sanction" of striking defendants' pleadings) (internal quotations omitted); *Fraser Yachts Fla., Inc. v. Milne*, No. 05-21168-CIV-JORDAN, 2007 WL 1113251, at *3 (S.D. Fla. Apr. 13, 2007) ("Although it appears that Plaintiff violated Rule 30(b)(6), its conduct is not sufficiently egregious to warrant the draconian sanction of dismissal.").

Imposition of sanctions are not appropriate here, and the cases cited by Entrust are inapposite.

## **CONCLUSION**

Entrust has been offered a witness for every topic in the Rule 30(b)(6) deposition notices to the Zeiser defendants. Rather than taking all of these depositions, Entrust chose to file the present motion. Entrust would rather attempt to use its own discovery tactics to, for the fourth time, ask the Court to dismiss the Zeiser defendants' meritorious defenses and claims than actually obtain the discovery it alleges it seeks.

The Zeiser defendants respectfully submit that Entrust's Motion should be denied in its entirety.

Dated: March 15, 2019

Respectfully submitted,

**STINSON LEONARD STREET LLP**

By: */s/ Michael J. Hartley*
Robert M. Evans, Jr. (*pro hac vice*)
Michael J. Hartley (*pro hac vice*)
Kyle G. Gottuso (*pro hac vice*)
Stinson Leonard Street LLP
7700 Forsyth Boulevard, Suite 1100
Saint Louis, Missouri 63105
Tel:  (314) 863-0800
Fax:  (314) 345-7600
Email:  robert.evans@stinson.com
michael.hartley@stinson.com
kyle.gottuso@stinson.com

-and-

James Glober
GLOBER LAW FIRM
2119 Riverside Avenue
Jacksonville, Florida 32204
Tel: (904) 633-9999
Fax: (904) 388-0968
Email: jglober@globerlaw.com

*Attorneys for Defendants Zeiser GmbH, Zeiser Inc., and Innovatime Industrie SARL*

## CERTIFICATE OF SERVICE

I hereby certify that on March 15, 2019, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Michael J. Hartley*